# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| HENRY M. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-CV-1429 NAB |
| | ) | |
| MICHAEL WHITE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants City of Ferguson, Missouri and Ferguson Police Officers Michael White, John Beaird, and Kim Tihen's Joint Motion for Summary Judgment [Doc. 124] and Plaintiff Henry Davis' Motion for Partial Summary Judgment against Defendant Beaird [Doc. 127]. Both motions have been fully briefed. Mr. Davis alleges Defendants violated his rights under the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, and Missouri tort law when he sustained injuries following his September 20, 2009 arrest. Mr. Davis has also filed a Motion to Strike portions of Officer Beaird's deposition testimony [Doc. 157]. Defendants filed a Motion for Leave to Produce Mr. Davis' criminal attorney Michael Kielty or, in the alternative, a Motion to Strike Mr. Kielty's affidavit from the record [Doc. 163]. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

## I.  Background

Mr. Davis filed suit against Defendants in August of 2010 alleging violations of the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, and Missouri tort law related to his September 20, 2009 arrest and detention. In February of 2011, the case was stayed pending the

outcome of criminal proceedings. It was reopened on January 30, 2013. On February 26, 2013, Mr. Davis filed an Amended Complaint. [Doc. 50.] Mr. Davis has since withdrawn several claims.[1] He maintains claims against Officers White, Beaird, and Tihen for Excessive Force under the Fourth Amendment and § 1983 and Assault and Battery under Missouri law (Counts I and VII), against the City of Ferguson for Municipal Liability and *Respondeat Superior* under § 1983 (Counts V and VI), and against Officer Beaird for Substantive Due Process under the Fourteenth Amendment and § 1983 (Count II).

### A.    Undisputed, Material Facts

At all relevant times, Officers Beaird, White, and Tihen acted under color of state law as police officers for the City of Ferguson police department. Around 3:00 a.m. on the morning of September 20, 2009, Officer Beaird arrested Mr. Davis on suspicion of driving while intoxicated. Mr. Davis did not complete a sobriety test. When he arrived at the Ferguson jail, Mr. Davis was placed in booking with Officer Pillarick and his handcuffs were removed. The only information Mr. Davis gave to Officer Pillarick was his name and social security number.

Officers Beaird and Pillarick then escorted Mr. Davis to cell three. Mr. Davis commented that the cell was for one person and someone was already in it. All the cells had at least one person in them. He asked for a mat or, alternatively, to be chained to a bench outside. He said if he did not receive a mat, he would not enter the cell. Officer Pillarick told Mr. Davis he would not receive a mat. One of the officers called for back up. Officers White, Tihen, and

---

[1] Mr. Davis has withdrawn Counts III, IV, and VII against Officer Beaird for Retaliatory and Malicious Prosecution. [Doc. 143.] The Court will therefore grant summary judgment for Officer Beaird on those counts.

Ballard responded.  They asked Mr. Davis why he would not enter the cell.  Mr. Davis responded that someone was already in it and he had not received a mat.

Officer White then forced Mr. Davis into the cell by grabbing his chest and pushing him back.  Physical contact between the officers and Mr. Davis ensued.  At some point, Officer Tihen struck Mr. Davis three to four times.  During the contact, Officer White and Mr. Davis both sustained injuries that caused bleeding and Mr. Davis' blood ended up on the floor of the cell. Officer White sustained an injury to his nose.  Mr. Davis sustained a head injury and painful bruising that did not subside for 30 days.

After the contact, Officer Ballard instructed Officer White to seek medical attention and paramedics were called.  Records show that Mr. Davis presented with a laceration to his forehead but paramedics did not treat him because he was yelling and screaming profanities.[2] Officer White drove himself and Officer Beaird drove Mr. Davis to the emergency room at Christian Hospital in St. Louis, Missouri.

Records show that, at the emergency room, Officer White complained that a prisoner had punched him in the face.  After a CT scan, Officer White was diagnosed with a Nasal Fracture (broken nose).  Medical personnel noted blood on his uniform.  He was prescribed 500 mg of Naprosyn Oral twice daily as needed for pain and discharged with instructions to follow up with the facial plastics clinic.

---

[2] Mr. Davis denies that he was belligerent toward the paramedics or medical personnel at Christian Hospital, but the evidence of his behavior is so one-sided that the Court cannot credit his account, even at the summary judgment stage. *See Reed v. City of St. Charles*, 561 F.3d 788, 790-91 (8th Cir. 2009).

Records show that Mr. Davis complained that officers had assaulted him and refused treatment because he wanted his picture taken before he was treated. He also refused to sign a refusal of treatment form. Medical personnel noted bleeding to his frontal scalp. Records also show he was belligerent toward staff, yelling and using expletives.[3] When Mr. Davis was returned to the jail, a booking photo was taken. The photo is a headshot and shows dried blood all over Mr. Davis' face.

The same morning, after the incident, Officer Beaird drew up four complaints alleging that Mr. Davis committed Property Damage by transferring his blood to the uniforms of Officers Beaird, White, Tihen, and Pillarick. In the complaints, Officer Beaird asserted that the officers were attempting to subdue Mr. Davis who was "actively resisting." Executed on September 24, 2013, the complaints formed part of a municipal case against Mr. Davis. *The City of Ferguson v. Henry M. Davis*, *Case No. 09-16166*. Mr. Davis was charged with Driving While Intoxicated, Speeding, Failure to Drive in a Single Lane, No Proof of Insurance, Failure to Obey Police Officer, and four counts of Destruction of City Property. As a result of plea negotiations, Driving While Intoxicated was reduced to Careless and Imprudent Driving, Failure to Drive in a Single Lane and No Proof of Insurance were reduced to non-moving violations, and the four counts of Destruction of City Property were reduced to two counts. In sum, Mr. Davis pled guilty to Careless and Imprudent Driving, Speeding, two non-moving violations, Failure to Obey Police Officer, and two counts of Destruction of City Property. Officer Beaird's complaints formed the sole basis for the Destruction of City Property charges.

---

[3] Again, the evidence of Mr. Davis' behavior is too one-sided to credit his account. *See Reed*, 561 F.3d at 790-91.

When Mr. Davis was released from the jail on September 22, 2013, he went to the emergency room at SSM St. Joseph Health Center in St. Charles, Missouri. Records show that he complained of persistent headaches and associated symptoms and was diagnosed with a "Concussion with no Loss of Consciousness" and "Scalp Laceration." He was prescribed 750 mg of Methocarbamol (Robaxin) once every six hours and 50 mg of Tramadol (Ultram) once every four hours as needed for pain. Mr. Davis was discharged with instructions to follow up in a week. He returned on September 29, 2013 for a CT scan, which was negative for signs of bleeding, masses, or stroke.

Nearly a year after the incident, on or around August 30, 2010, Officer Beaird applied for felony warrants against Mr. Davis, resulting in a state case against him for Assault on a Law Enforcement Officer. *State of Missouri v. Henry M. Davis, Case No. 10SL-CR07793-01*. The case was ultimately dropped.

### B.     Disputed, Material Facts

This case essentially pits the testimony of Mr. Davis against that of Officers Beaird, White, Tihen, Pillarick, and Ballard. There is no video of the incident despite the fact that the jail is equipped with video cameras. Nor are there any photos beyond the booking photo taken of Mr. Davis. There is no testimony from other detainees. The parties present different versions of what happened on September 20, 2009. Mr. Davis asserts that Officer Beaird arrested the "wrong" Henry Davis, that he was generally compliant, and that the officers nonetheless beat him without provocation while he was handcuffed on the ground. By contrast, Defendants assert that Mr. Davis was intoxicated and belligerent throughout the day and that he punched Officer White, triggering a struggle wherein the officers fought to subdue Mr. Davis. For clarity and

because there are dueling motions for summary judgment, the facts according to both sides are presented in more detail below.

### i.      Mr. Davis' Interactions with Defendants Prior to the Incident

According to Mr. Davis, when Officer Beaird arrested him, he was told it was because of warrants.  When he arrived at booking, he complied with all of Officer Pillarick's requests.  He provided his name and social security number, at which point Officer Pillarick said they had a problem.  When Mr. Davis asked why, Officer Pillarick said the warrants were for a man who was taller and had a different social security number and middle name.  Mr. Davis claims that, beyond asking the officers a few questions and refusing to enter his cell without a mat, he was compliant.

According to Defendants, when he was arrested, Mr. Davis appeared intoxicated but refused a sobriety test, along with other instructions.  Mr. Davis was belligerent during the booking process and refused to provide any information beyond his name and social security number.  Outside of cell three, he would not cooperate, was yelling obscenities, and, after being told by Officer Beaird that not entering the cell was not an option, threatened to assault Officers Beaird and Pillarick, prompting them to call for back up.  When Officers White, Tihen, and Ballard arrived, Mr. Davis' fists were balled up as Officer Beaird continued to ask him to enter the cell.  When Mr. Davis told the officers he would not enter the cell without a mat, Officer Beaird said "[a]re we really going to have to do this," to which Mr. Davis responded, "[y]es, we are" and that he would make the officers "kick my ass so I can sue you."

### ii.      Events After Officer White Forced Mr. Davis into the Cell

According to Mr. Davis, when Officer White forced him into the cell, Mr. Davis hit the back of his head on the back of the cell, which dazed him but did not cause any visible injury.

He then raised his arms and ducked his head to "cover up."  Mr. Davis did not recall whether any part of his body made contact with Officer White as he covered up.  Officer White ran out of the cell.  Mr. Davis walked toward the front of cell and asked why the officers were doing this to him.  They told him to lie on the ground and put his hands behind his back.  He complied, lying on his stomach.  At that point, Officer Tihen jumped on the bed.  Mr. Davis' cell mate had exited when Officer White pushed Mr. Davis into the cell.  But it was still a small cell, so Officer Tihen had to jump on the bed to get behind Mr. Davis.  From the bed, she then straddled Mr. Davis and handcuffed him.

According to Mr. Davis, the officers then proceeded to beat him.  Officer Tihen had him handcuffed.  Officers Beaird and White entered the cell.  The officers, including Officer Tihen, started hitting Mr. Davis.  He covered up to protect himself.  Officers Beaird and White left the cell.  Officer Tihen was still behind Mr. Davis, holding him up such that his head was slightly raised.  Officer White then came back into the cell and kicked Mr. Davis in the head with the toe of his boot, causing the scalp laceration.  Officer Tihen said "Oh my god."  Mr. Davis did not lose consciousness but was again dazed.

According to Defendants, Officer White was closing the door after forcing Mr. Davis in the cell when Mr. Davis grabbed him and punched him in the nose.  Mr. Davis was clearly intoxicated.  When Mr. Davis would not let go of Officer White, Officer White struck him twice in the side and once in an unknown location.  Mr. Davis and Officers White and Tihen ended up on the floor.  Officer White managed to break free and exit the cell.  Officer Tihen was pinned.  Fearing Mr. Davis would bite her, she struck him three to four times in the back of the head.  With help from Officers Pillarick and Beaird, she was eventually able to handcuff Mr. Davis.  In addition to Officer White's broken nose, Officer Tihen had bumps and bruises and was sore for

days and Officer Beaird had a sore hand. Defendants maintain Mr. Davis hit his head at some point during the struggle.

### iii. Testimony as to Whether There was Blood on the Officers' Uniforms

Mr. Davis testified that he did not see any blood on the officers' uniforms, but that there was a lot of his blood on his face and clothing and on the ground. He testified that he did not spit or wipe blood on any of the officers. Mr. Davis maintains that, because of Officer Beaird's complaints, he pled guilty to two counts of Destruction of City Property he did not commit.

On January 14, 2013, Officer Beaird gave a deposition in Mr. Davis' state case. When asked if he, Officer Beaird, had any blood on him after the incident, he answered no. When asked if he saw any blood on Officer White's uniform after the incident, he answered that he did not remember seeing any. When asked if he noticed any blood on Officer Tihen's uniform after the incident, he answered that he did not know. Officer Beaird was then presented with the four complaints signed by him.

On August 29, 2013, Officer Beaird gave a deposition in this case. Officer Beaird said the following with regard to his January 14, 2013 deposition testimony: "When counsel was questioning me during the deposition, I had no recollection of the complaints that I had signed against Mr. Davis. When he [counsel] brought those to light during the deposition, it refreshed my memory. But at that point – I do recall signing the complaints and the fact that Officer Tihen, Pillarick, White and myself had blood on us. But during the initial questioning I did not." When asked "[a]s you sit here today, do you recall whether blood of Henry Davis was transferred to the uniforms of the four [officers]," Officer Beaird answered "I do recall that." When Officer Beaird was asked how blood got on Officer Pillarick's uniform, he answered that

it must have been inside the cell.  When asked if Officer Pillarick entered the cell at any point during the incident, Officer Beaird answered that he was unclear on that.

Officers White, Tihen, and Pillarick also gave deposition testimony regarding the presence of blood on their uniforms.  Officer White testified that his nose was bleeding heavily and that he bled on Officer Tihen during the struggle to subdue Mr. Davis.  When asked if any of Mr. Davis' blood got on his uniform, Officer White responded that he believed all of the blood was his own.  Officer Tihen testified that both Officer White and Mr. Davis got blood on her uniform.  Officer Pillarick testified that he entered the cell towards the end of the struggle and helped to handcuff Mr. Davis.  When asked if he got any blood on his uniform, he answered no.  Officer Pillarick testified he could not recall whether he saw blood on Officer Beaird or Officer Tihen's uniform.  In addition, Officer Ballard testified that all the officers were covered in blood.

## II.     Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Brandt v. Davis*, 191 F.3d 887, 891 (8th Cir. 1999).  The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A material fact is one that "might affect the outcome of the suit under the governing law" and a genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. There is no genuine issue of material fact where the non-moving party failed to "make a showing sufficient to establish the existence of an element essential to that party's case …. since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden is on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. When the burden shifts, the non-moving party cannot rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). The non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at

334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id*. Finally, "[w]here as here, each side moves for summary judgment, each concedes that for purposes of his own motion there is no genuine factual issue; however, the fact that both sides move for summary judgment does not necessarily establish that the case is a proper one for summary disposition." *Young v. Southwestern Bell Telephone Co.*, 309 F.Supp. 475, 476 (E.D. Ark. 1969).

### III. Discussion

#### A. Excessive Force Claim

In Count I of his Complaint, Mr. Davis alleges that Officers White, Beaird, and Tihen violated the Fourth Amendment and 42 U.S.C. § 1983 by using excessive force against him. Defendants argue that they are entitled to qualified immunity because Mr. Davis suffered *de minimis* injuries and, given the state of the law on September 20, 2009, a reasonable officer could have believed that he did not violate the Fourth Amendment if he only inflicted *de minimis* injuries. Mr. Davis counters that it was clearly established at the time that the use force without any provocation violated the Fourth Amendment and, alternatively, his injuries were more than

*de minimis*.  The Court agrees with Defendants and holds that Officers White, Beaird, and Tihen are entitled to qualified immunity.

Where a right was not "clearly established" at the time of an alleged constitutional violation, an officer is entitled to qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (receding from *Katz* by allowing courts to evaluate whether a right was clearly established as a threshold inquiry).  Qualified immunity is an absolute immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).  It is "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Id*.   In the context of an excessive force claim, "the relevant, dispositive inquiry … is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Katz*, 533 U.S. at 202.  "In other words, we must ask whether the law at the time of the events in question gave the officers 'fair warning' that their conduct was unconstitutional." *Chambers v. Pennycock*, 641 F.3d 898, 908 (8th Cir. 2011).  Qualified immunity "applies regardless of whether [an officer's] error is a mistake of law, a mistake of fact, or a mistake based on the mixed questions of law and fact" as long as the mistake was reasonable under the circumstances. *Pearson*, 555 U.S. at 231 (internal quotations omitted); *see also Katz*, 533 U.S. at 206 (officers are entitled to qualified immunity for "reasonable, but mistaken, beliefs" and "reasonable mistakes as to the legality of their actions").  It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

Defendants rightly emphasize that, as of Mr. Davis' arrest, Eighth Circuit law was split on the question of whether *de minimis* injuries foreclosed a § 1983 excessive force claim. In *Chambers v. Pennycock*, decided on June 6, 2011, the Eighth Circuit clarified that *de minimis* injuries do not necessarily foreclose such a claim but acknowledged that under prior law, "a reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." 641 F.3d at 908. The court elaborated, "The officers knew there was some chance that their actions would cause only *de minimis* injury, and it was reasonable for the officers to believe that they remained within constitutional bounds if that was the result." *Id.* Other courts have cited this language in granting qualified immunity to officers who caused *de minimis* injuries pre-*Chambers*. *See, e.g., Grady v. Becker*, 907 F. Supp. 2d 975, 983 (D. Minn. 2012). Mr. Davis argues *Chambers* is inapposite and cites cases holding that any use of force without provocation is excessive. However, those cases do not negate the fact that when Mr. Davis was arrested, at least *some* Eighth Circuit panels were foreclosing excessive force claims based on *de minimis* injuries. *See, e.g., Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) (*de minimis* injuries preclude a claim for excessive force); *see also Chambers*, 641 F.3d at 907 (granting qualified immunity where plaintiff claimed officer kicked him while he was restrained on the ground and offering no resistance).

At core, whether Officers White, Beaird, and Tihen are entitled to qualified immunity turns on the legal definition of *de minimis* at the time Mr. Davis was arrested. Unless the law at the time of his arrest clearly established his injuries as non-*de minimis*, Defendants are entitled to qualified immunity. Viewed in the light most favorable to Mr. Davis, he sustained a scalp laceration for which he did not receive stitches, a concussion, and bruising all over his body.

The bruising lasted for 30 days and he has continued to experience frequent headaches. He also has a permanent scar from the laceration. While there are certainly cases to suggest these injuries were considered non-*de minimis*, there are also cases to suggest the converse. Compare *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) ("single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf" sufficient to support excessive force claim), with *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) ("bruised ribs, a sore shoulder, and multiple abrasions to [the] face and head" that "were not permanent but some took six weeks to heal" categorized as *de minimis*); *Andrews*, 417 F.3d at 818 (sore neck, arm, and shoulder, "horrible, horrible headache," and exacerbated pre-existing mental condition were *de minimis*); *see also Grady*, 907 F. Supp. 2d at 984 (officers entitled to qualified immunity even though some pre-*Chambers* cases found injuries like those suffered by plaintiff to be *de minimis*); *Robinson v. City of Minneapolis*, 2013 WL 3929043, No. 10-3067, at *5 (July 30, 2013) ("contusions and swelling" were *de minimis*). Moreover, *de minimis* is more of a standard than a rule, clearly defined in the extremes but much hazier toward the middle. *See* FREDERICK SCHAUER, THINKING LIKE A LAWYER: A NEW INTRODUCTION TO LEGAL REASONING 88 (2009). "Qualified immunity operates … to protect officers from the sometimes hazy border between excessive and acceptable force." *Id.* And even if the majority of prior cases established that injuries akin to those suffered by Mr. Davis are non-*de minimis*, officers are still allowed reasonable mistakes of law. *See Katz*, 533 U.S. at 206. As a result, as unreasonable as it may sound, a reasonable officer could have believed that beating a subdued and compliant Mr. Davis while causing only a concussion, scalp laceration, and bruising with almost no permanent damage did not violate the Constitution. The Court grants summary judgment to Defendants on Count I.

### B. Assault and Battery Claims

In Count VII of his Complaint, Mr. Davis alleges that Officers White, Beaird, and Tihen committed assault and battery against him under Missouri law. Defendants contend that they are entitled to summary judgment based on official immunity. Official immunity shields officials from liability for negligence in the performance of "discretionary, as opposed to ministerial, duties." *Brown v. Tate*, 888 S.W.2d 413, 415 (Mo. App. W.D. 1994). It "provides that public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *DaVee v. Mathis*, 812 S.W.2d 816, 827 (Mo. App. W.D. 1991) (citing *Kanagawa v. State*, 865 S.W.2d 831, 835 (Mo. banc 1985)). Whether duties are discretionary or ministerial "must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policy making or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." *Kanagawa*, 865 S.W.2d at 835. Officers' actions in detaining someone who has been arrested are properly categorized as discretionary. Compare *DaVee*, 812 S.W.2d at 827 (actions in executing search warrant were discretionary such that officers were entitled to official immunity) (citing *Dalia v. United States*, 441 U.S. 238, 256, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979)), with *Jungerman v. City of Raytown*, 925 S.W.2d 202, 206 (Mo. banc 1996) (inventorying, recording, and storing inmates' property was ministerial). As a result, Defendants are entitled to official immunity on Mr. Davis' state law claims because they acted constitutionally and within their discretion. *See Grady*, F. Supp. 2d at 985 (officers entitled to official immunity on state law assault and battery claims because they caused only *de minimis* injuries). The Court grants summary judgment to Defendants on Count VII.

### C. Claims against the City of Ferguson

In Counts V and VI of his Complaint, Mr. Davis alleges that the City of Ferguson is liable under § 1983 for the use of excessive force by Officers White, Beaird, and Tihen. Because the underlying excessive force claim has failed, the claims against the City of Ferguson fail as well. *See Reed v. City of St. Charles*, 561 F.3d 788, 792 (8th Cir. 2009). The Court grants summary judgment to the City of Ferguson on Counts V and VI.

### D. Substantive Due Process Claim

In Count II, Mr. Davis alleges that Officer Beaird violated his substantive due process rights by deliberately fabricating at least three of the four Property Damage complaints against him. As a threshold matter, the Court will address Mr. Davis' Motion to Strike portions of Officer Beaird's August 29, 2013 deposition testimony. The motion was fully briefed. In his January 14, 2013 deposition, without having reviewed the four Property Damage complaints, Officer Beaird testified that there was no blood on his uniform and that he could not remember or did not know whether there was blood on other officers' uniforms. In his August 29, 2013 deposition, when asked "[i]s there anything that you wanted to clarify on that [January 14, 2013] deposition transcript that you had read," Officer Beaird explained that reviewing the complaints had refreshed his memory and he now recalled there was blood on all four officers' uniforms. Counsel for Mr. Davis objected to the question as vague. Mr. Davis contends that Officer Beaird's explanation should be stricken under the sham exception doctrine and, alternately, because it was beyond the scope of direct examination. Officer Beaird counters that the sham exception doctrine is inapplicable. The Court agrees with Officer Beaird.

The goal of the sham exception doctrine is to prevent parties from giving last-minute, contradictory testimony solely to survive a motion for summary judgment. "Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a

district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment." *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988). Officer Beaird's explanation does not fall within the sham exception doctrine. Significantly, the ambiguity in Officer Beaird's statements as to whether there was blood on the officers' uniforms existed *before* his August 29, 2013 deposition. It is not as though Officer Beaird revised his prior testimony solely to create an issue of fact. Quite the opposite. He revised his testimony in order to explain a pre-existing ambiguity. Finally, Mr. Davis cannot raise a Hail Mary objection in a reply memorandum that he did not raise at the time of Officer Beaird's deposition. *See* Fed. R. Civ. P. 32(d)(3)(B). Mr. Davis' Motion to Strike portions of Officer Beaird's August 29, 2013 deposition testimony is denied.

Having dispensed with Mr. Davis' Motion to Strike, the Court will take up the parties' dueling motions for summary judgment on Count II. Mr. Davis contends he is entitled to summary judgment because the undisputed facts show that Officer Beaird knowingly submitted false complaints to coerce him into pleading guilty. Officer Beaird in turn contends that he is entitled to summary judgment based on qualified immunity. He argues that the undisputed facts show there was probable cause to believe Mr. Davis committed the offenses. He further argues there is no evidence to suggest he had knowledge of their alleged falsity or that his conduct in any way shocked the conscience. Mr. Davis counters that this case is identical to *Winslow v. Smith*, 696 F.3d 716 (8th Cir. 2012), where the Eighth Circuit reversed the district court's grant

of qualified immunity finding that the facts viewed in the light most favorable to the plaintiffs supported an inference of conscience-shocking reckless investigation and deliberate fabrication.

"To breach the shield of qualified immunity by establishing a violation of substantive due process rights, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the official was shocking to the contemporary conscience." *Winslow*, 696 F.3d at 731 (internal quotations omitted). Where a plaintiff claims that officers manufactured false evidence, he alleges a violation of his fundamental "liberty interest in fair criminal proceedings." *Id.*; *see also Wilson v. Lawrence Cnty*, 260 F.3d 946, 957 (8th Cir. 2001) ("Law enforcement officers … have a responsibility to criminal defendants to conduct their investigations and prosecutions fairly"). Such a claim "requires proof that investigators deliberately fabricated evidence in order to frame a criminal defendant" and that the evidence was actually "used to deprive the defendant of her liberty in some way." *Winslow*, 696 F.3d at 732, 735 (internal quotations omitted). "Failing to follow guidelines to carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating false evidence is quite another." *Deveraux v. Abbey*, 263 F.3d 1070, 1076-77 (9th Cir. 2001) (en banc), cited with approval in *Winslow*, 696 F.3d at 732. To get past qualified immunity, Mr. Davis must show that Officer Beaird intentionally fabricated the complaints, that Mr. Davis therefore pled to crimes he did not commit, and that Officer Beaird's conduct shocked the conscience.

The Court will take up Mr. Davis' motion first. Viewed in the light most favorable to Officer Beaird, on September 20, 2009, he and Officers White, Tihen, and Pillarick attempted to subdue Mr. Davis after Mr. Davis punched Officer White. The struggle was a "pile" of bodies where all four officers made some kind of physical contact with Mr. Davis. Both Officer White

and Mr. Davis were bleeding.  By the end of the struggle, all of the officers had blood on them, with the possible exception of Officer Pillarick.  Later that morning, Officer Beaird executed the four complaints alleging Property Damage.  When he was questioned on January 14, 2013, a little over three years after the incident, he forgot that there had been blood on his uniform and could not remember whether there had been blood on Officer White and Tihen's uniforms.  But after reviewing the complaints, Officer Beaird recalled that they were correct.  These facts in no way support a finding of deliberate fabrication that shocks the conscience.  The Court will deny Mr. Davis' Motion for Partial Summary Judgment Against Defendant Beaird.

Next, the Court will take up Officer Beaird's motion.  "The party asserting [qualified] immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *White v. McKinley*, 519 F.3d 806 (8th Cir. 519 F.3d 806).  Viewed in the light most favorable to Mr. Davis, on September 20, 2009, Officers Beaird, White, and Tihen beat him without provocation while he was handcuffed on the ground.  Defendants argue that, because Mr. Davis has done nothing more than put forth self-serving testimony, this Court should not credit his account, even when the facts are viewed in the light most favorable to him.  The Court disagrees.  The Eighth Circuit has stated:

> If opposing parties tell two different stories, the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in the light most favorable to the non-moving party—as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them.  A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture, or fantasy.  In sum, the evidence must be such that a reasonable jury could return a verdict for the non-moving party.

*Reed v. City of St. Charles*, 561 F.3d 788, 790-91 (8th Cir. 2009) (citations and internal quotations omitted). In *Reed*, the Eighth Circuit confronted a situation much like the Court confronts here. Tommy Reed's testimony was the only evidence supporting his contention that several officers beat him after he cooperated by lying down with his hands behind his back. *Id.* at 790. The officers claimed he had been resisting arrest. *Id.* However, in Mr. Reed's case, his account was directly contradicted by other evidence. Mr. Reed actually plead guilty to resisting arrest without raising any claim of mistreatment at his plea hearing or sentencing and medical records showed that shortly after the incident he was deemed fit for confinement. *Id.* at 791. Here, the assault charges against Mr. Davis were dropped and the medical evidence is at least consistent with his account. Just as Mr. Davis cannot say how Officer White was injured, Defendants cannot say how Mr. Davis was injured. In addition, the seminal Supreme Court case on "self-serving testimony," *Scott v. Harris*, involved an incident of alleged excessive force that was clearly contradicted by video evidence. 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Loving v. Roy*, 2013 WL 4734017, No. 12-cv-551 (D. Minn. Sept. 3, 2012) (granting qualified immunity where video "plainly contradicted" plaintiff's claim of excessive force). No such video exists in this case. While portions of Mr. Davis' testimony could be called into question,[4] his account of the incident is not so blatantly contradicted by the record that it constitutes mere speculation, conjecture, or fantasy. A reasonable juror could find Mr. Davis credible enough to return a verdict in his favor. The Court will therefore credit his account in evaluating Officer Beaird's motion for summary judgment.

---

[4] For example, Mr. Davis asserts that he was not belligerent at any point, which is contradicted by medical evidence.

Taking as true Mr. Davis' assertion that Officers Beaird, White, and Tihen beat him without provocation while he was on the ground, Officer Beaird deliberately fabricated the four complaints alleging Property Damage.  First, the complaints assert that Mr. Davis was "actively resisting."  Second, section 29-61 of the Ferguson Code of Ordinances defines Property Damage as follows: "A person commits the offense of property damage if he knowingly damages the property of another."  The transfer of Mr. Davis' blood, if it occurred, to the officers' uniforms while they were beating him hardly seems to qualify as intentional property damage.  It is not enough, however, that Officer Beaird intentionally fabricated false evidence.  The evidence must also have been used to deprive Mr. Davis of his liberty in some way.

A criminal defendant's substantive due process rights are violated when deliberately fabricated evidence is used to secure his conviction, even if he enters a plea. *See Winslow*, 696 F.3d at 716.  In his deposition, Mr. Davis maintained that he did not commit Destruction of City Property despite his guilty plea.  He has cited the affidavit of his attorney, Micheal Kielty, to show that Mr. Kielty "relied on" Officer Beaird's complaints in negotiating Mr. Davis' plea and that the complaints were therefore used to deprive him of his right to fair criminal proceedings. Officer Beaird has moved to strike Mr. Kielty's affidavit.  The Court will deny the motion as moot.  It is undisputed that the four complaints formed the sole basis for the four counts of Destruction of City Property.  Mr. Davis ultimately pled to two of those counts.  Mr. Kielty's testimony is not necessary for the Court to conclude that the complaints led Mr. Davis to plead guilty to two counts of Destruction of City Property. *Cf Winslow*, 696 F.3d at 716 (largely circumstantial evidence that false evidence was used at plea hearings sufficient to support claim in much more complicated investigation).  Therefore, under the facts viewed in the light most favorable to Mr. Davis, Officer Beaird intentionally fabricated the four complaints and that

fabricated evidence was then used to secure Mr. Davis' conviction on two counts of Destruction of City Property.

The Court will now turn to the most difficult issue: whether Officer Beaird's conduct shocks the conscience. "Only in the rare situation when the state action is 'truly egregious and extraordinary' will a substantive due process claim arise." *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012). "Substantive due process is concerned with violations of personal rights so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power." *Golden ex rel. Balch v. Anders*, 324 F.3d 650, 652-53 (8th Cir. 2003) (internal quotations and alterations omitted). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 848, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). "Only the most severe violations of individual rights that result from the 'brutal and inhumane abuse of official power' rise to this level." *White v. Smith*, 696 F.3d 740, 758 (8th Cir. 2012) (quoting *C.N. v. Willmar Pub. Schs. Indep. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)).

In twin cases involving the same investigation, the Eighth Circuit reversed a grant of qualified immunity to officers who had participated in the investigation and conviction of the plaintiffs for a rape and murder they did not commit. *White v. Smith*, 696 F.3d 740, 758 (8th Cir. 2012); *Winslow v. Smith*, 696 F.3d 716 (8th Cir. 2012). The facts of the investigation were conscience-shocking without reference to the legal standard. There was evidence that the officers "systematically and intentionally coached witnesses into providing false testimony that fit [the officers'] particular narrative of how the crime was committed." *White*, 696 F.3d at 754.

In *White*, the court found that there was evidence of the following pattern: "[The officers] first convinced a suspect that he or she was at the scene of the crime through lies, threats, leading questions, manipulative 'therapy' sessions, and the alleged accusations of several other 'accomplices;' and then if the suspect's blood was not a match for the blood found at the crime scene, [the officers] manipulated the suspect into implicating yet another individual, thus beginning the process again." *Id.* at 755. Similarly, in *Moran v. Clarke*, the Eighth Circuit held that evidence of a "purposeful police conspiracy to manufacture, and the manufacture of, false evidence" was sufficient to place a substantive due process claim before a jury. 296 F.3d 638, 647 (8th Cir. 2002). The plaintiff, a police officer, was acquitted after going to trial on assault charges.

Mr. Davis' substantive due process claim is a far cry from *White* and *Winslow*, or even *Moran*. The plaintiffs in *White* and *Winslow* were falsely convicted of rape and murder based on a witch hunt that can only be described as the perfect storm of incompetence and corruption and exonerated years later through DNA evidence. By contrast, Mr. Davis alleges that he was forced to plead guilty to two counts of Destruction of City Property. This does not sound conscience-shocking by comparison. Indeed, because Officer Beaird alone executed the complaints, Mr. Davis does not even allege some broader conspiracy to deny him his substantive due process rights as was the case in *White*, *Winslow*, and *Moran*. Nevertheless, in *White*, the Eighth Circuit set forth the following proposition which would seem to be directly on point: "There can be little doubt that intentionally manufacturing false evidence to convict a criminal defendant is the sort of 'brutal and inhumane abuse of power' that shocks the conscience." *White*, 696 F.3d at 758. While Mr. Davis' plea to two counts of property damage might differ from the deprivations normally associated with successful substantive due process claims, whether a substantive due

process violation "shocks the conscience" is an inquiry centered on intent. *See Lewis*, 523 U.S. at 848 ("It should not be surprising that the constitutional concept of conscience shocking duplicated no traditional category of common-law fault, but rather points clearly away from liability, or clearly towards it, only at the ends of the tort law's spectrum of culpability.").   In other words, a relatively minor deprivation can support a substantive due process claim where an officer acts with a highly culpable mental state. *Cf. Moran*, 296 F.3d at 644 (commenting in dicta that "some precedent at least implies that even minor interests may be actionable if government conduct is sufficiently arbitrary and outrageous").   In addition, "the right to be free from a conviction purposefully obtained by false evidence and false testimony has long been clearly established." *White*, 696 F.3d at 759.   The Court finds that, when viewed in the light most favorable to Mr. Davis, the facts could support a reasonable inference that Officer Beaird violated Mr. Davis' substantive due process rights.   The Court will therefore deny summary judgment on Count II.

## IV.     Conclusion

The Court grants summary judgment to Defendants on all counts with the exception of Count II against Officer Beaird.   In addition, the Court denies Defendants' Joint Motion for Partial Judgment on the Pleadings [Doc. 53] as moot since the counts disputed therein have either been withdrawn or dismissed pursuant to this Order.   The only remaining claims in this action are: (1) Count II of Mr. Davis' Amended Complaint alleging Officer Beaird violated Mr. Davis' substantive due process rights [Doc. 50] and (2) Officer White's Counterclaim against Mr. Davis for Battery [Doc. 7].

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. [Doc. 124.]

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Defendants Michael White, John Beaird, and Kim Tihen on Counts I and VII.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Defendant City of Ferguson, Missouri on Counts V and VI.

**IT IS FURTHER ORDERED** that summary judgment is **DENIED** regarding Count II against Defendant Beaird.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment against Defendant Beaird on Count II is **DENIED**. [Doc. 127.]

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike portions of Officer Beaird's deposition testimony is **DENIED**. [Doc. 157.]

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to Produce Mr. Davis' criminal attorney Michael Kielty or, in the alternative, a Motion to Strike Mr. Kielty's affidavit from the record is **DENIED** as moot. [Doc. 163.]

**IT IS FURTHER ORDERED** that Defendants' Joint Motion for Partial Judgment on the Pleadings is **DENIED** as moot. [Doc. 53.]

A separate Judgment will accompany this Memorandum and Order.

Dated this 31st day of December, 2013.

       /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE